UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| SHANE BOWMAN, et al., individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 4:13 CV 2519 CDP |
| THE DOE RUN RESOURCES CORP., et al., | ) ) ) ) | |
| Defendants. | ) | |

## **MEMORANDUM AND ORDER**

Plaintiffs were plant workers at Doe Run's lead smelter in Herculaneum, Missouri and allege that they and other similarly situated employees were required to perform work duties before and after their shifts without being paid.[1] Plaintiffs bring a collective action for unpaid compensation under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, et seq., on behalf of themselves and others similarly situated. Plaintiffs also seek to certify a class action under Federal Rule of Civil Procedure 23 for state law statutory claims under the Missouri Minimum Wage Law (MMWL), Mo. Rev. Stat. § 290.500 et seq., as well as for common law claims of quantum meruit and breach of contract.

---

[1]These duties included obtaining, donning, doffing, washing, and stowing protective clothing and equipment.

Plaintiffs now move for conditional certification of this case as a collective action under the FLSA so that they may notify certain of defendants' past and present employees of this action and provide them the opportunity to "opt in" as plaintiffs to this litigation.[1] Defendants oppose conditional certification on various grounds. I will grant plaintiffs' motion for the reasons that follow.

### Background

Plaintiffs were hired to work in the smelter either directly by Doe Run or as contract employees through All Type Contracting. Regardless of the job performed or the type of employee, all workers at the smelter were required to wear certain clothing and equipment to protect them from lead exposure. This clothing and equipment must be left at the facility each day and cannot be worn to or from the worker's home. An outside cleaning company removes lead residue from the clothing and equipment. According to the numerous affidavits submitted in support of conditional certification, workers are required each day before the start of their shift to obtain and put on this protective gear before proceeding to their position in the plant. This process requires workers to go to the "clean side" lockers to change out of their street clothes and put on their company issued pants,

---

[1] Numerous other plant workers have already filed consents to join this action even though it has not yet been certified as a collective action.

shirt, and jacket. Then they walk over to the "dirty side" lockers to obtain and don their company issued boots. Workers next retrieve company issued respirators, which are assembled and required to be worn throughout the facility. They were then expected to proceed to their work stations before their shifts started so that their co-workers could begin the reverse process of doffing and stowing the clothing and equipment and showering before leaving the plant. The workers all testified that they were required to perform these mandatory activities off the clock before their shifts started and that they spent between 45 to 60 minutes per shift performing these activities. Workers were also sometimes required to doff and stow the clothing and equipment and shower after their shifts ended, also off the clock. The workers were not paid for these off the clock activities, be it straight or overtime pay, and these hours were not considered in the calculation of incentive pay, either.

Contract employees were paid by All Type but directly supervised by Doe Run. Doe Run controlled their schedules and determined how many contract workers worked each shift. Doe Run required them to adhere to the same donning and doffing procedures as its employees, also off the clock and without pay. When some contract employees sought to paid for these donning and doffing activities, they were told by All Type that because Doe Run did not compensate

for these activities, they would not pay the contract workers for these activities, either. Contract workers could not receive a pay increase from All Type or work excess hours without Doe Run's prior approval. They were subject to training, discipline, and termination by Doe Run and, like Doe Run's regular employees, were tested regularly for lead exposure by Doe Run. Doe Run kept records of lead testing for contract and regular employees.

Plaintiffs aver that Doe Run and All Type have a systematic and single common policy that requires all employees to work off the clock, without pay, each day obtaining clothes and equipment and performing donning and doffing related activities. They further state that Doe Run has a common policy requiring employees to work off the clock to relieve co-workers before scheduled shift times or face additional uncompensated off the clock work at the end of their own shift performing stowing, doffing, and washing activities. In their motion, plaintiffs seek conditional certification of a class consisting of all current and former hourly paid plant workers at Doe Run's Herculaneum facility, from April 22, 2011, to the present, who "received a paycheck from either defendant Doe Run or defendant All Type, worked at least 38 hours in any week in the last three years, worked any shift, and prior to and/or after their shift, obtained or stowed clothing and equipment, put on and/or took off clothing and equipment, walked to their position

on the line to relieve a co-worker, showered, etc." Plaintiff Bowman seeks conditional certification of a subclass of plant workers at Doe Run's Herculaneum facility, from April 22, 2011, to the present, who "received a paycheck from defendant Doe Run for more than 40 hours of work in any week, worked any shift, and did not receive overtime at the appropriate rate of time and one-half his or her regular rate of pay because defendant Doe Run failed to include incentive bonuses in the calculation of the regular rater of pay for overtime purposes." Plaintiff Aubuchan seeks conditional certification of a subclass of plant workers at Doe Run's Herculaneum facility, from April 22, 2011, to the present, who "received a paycheck from defendant All Type for at least 38 hours of work in any week, worked any shift, and prior to and/or after their shift, obtained or stowed clothing and equipment, put on and/or took off clothing and equipment, walked to their position on the line to relieve a co-worker, showered, etc."

Discussion

Section 7 of the Fair Labor Standards Act mandates that an employer may not subject non-exempt employees to a work week in excess of 40 hours unless the employee is compensated for her overtime with additional pay of at least one and one half times her regular hourly wage. 29 U.S.C. § 207. The Act also provides that any employer who violates this restriction "shall be liable to the employee or

employees affected in the amount of their . . . unpaid overtime compensation . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

An action to recover the overtime and liquidated damages may be maintained "by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." Id. The FLSA does not define the term "similarly situated."[2] Although the Eighth Circuit Court of Appeals has not decided the standard to determine whether potential opt-in plaintiffs are "similarly situated" under § 216(b), the district courts in this circuit use a two-step analysis. See e.g., Fry v. Accent Marketing Servs., LLC, 2013 WL 4093203, *2 (E.D. Mo. Aug. 13, 2013); Simmons v. Enterprise Holdings, Inc., 2011 WL 855669, *2 (E.D. Mo. Mar. 9, 2011); Littlefield v. Dealer Warranty Services, LLC, 679 F. Supp. 2d 1014, 1016 (E.D. Mo. 2010); Parker v. Rowland Express, Inc., 492 F. Supp. 2d 1159, 1164 (D. Minn. 2007); Davis v. Novastar Mortgage, Inc., 408 F. Supp. 2d 811, 815 (W.D. Mo. 2005); Dietrich v. Liberty Square, L.L.C., 230 F.R.D. 574, 577 (N.D. Iowa 2005); McQuay v. American

---

[2]A 216(b) collective action differs from class actions brought under Rule 23 of the Federal Rules of Civil Procedure. Davis v. Novastar Mortgage, Inc., 408 F. Supp. 2d 811, 814-15 (W.D. Mo. 2005). A primary distinction is that under FLSA a similarly situated employee must "opt-in" to the collective action to be bound by it, whereas under Rule 23, a similarly situated employee must "opt-out" to avoid being bound by the judgment. Id. See also Grayson v. K Mart Corp., 79 F.3d 1086, 1096 (11th Cir. 1996) (noting that the "similarly situated" standard is considerably less stringent than Rule 23(b)(3) class action standards).

International Group, Inc., 2002 WL 31475212, *2 (E.D. Ark. Oct. 25, 2002).

As is typical under the two-step process, plaintiffs have moved for conditional certification for notice purposes at an early stage of the litigation. See Davis, 408 F. Supp. 2d at 815. At this first step in the process, I do not reach the merits of their claims. Kautsch v. Premier Communications, 504 F. Supp. 2d 685, 688 (W.D. Mo. 2007); Hoffmann v. Sbarro, Inc., 982 F. Supp. 249, 262 (S.D.N.Y. 1997) (citation omitted). Plaintiffs' burden at this stage is not onerous. See Kautsh, 504 F. Supp. 2d at 688; Smith v. Heartland Automotive Services, Inc., 404 F. Supp. 2d 1144, 1149 (D. Minn. 2005) (burden at first stage is "not rigorous"). Conditional certification at the notice stage requires "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan." Davis, 408 F. Supp. 2d at 815. "Plaintiffs need not show that members of the conditionally certified class are actually similarly situated." Fast v. Applebee's International, Inc., 2007 WL 1796205, *3 (W.D. Mo. June 19, 2007). That determination is made during the second step of the process, after the close of discovery. Id. "Determining whether such a collective action is the appropriate means for prosecuting an action is in the Court's discretion." Heartland, 404 F. Supp. 2d at 1149 (citation omitted). Once the Court conditionally certifies the class, potential class members are given notice

and the opportunity to "opt-in." Parker, 492 F. Supp. 2d at 1159.

At the second step of the process, the defendant may move to decertify the class. See Dernovish v. AT&T Operations, Inc., 2010 WL 143692, *1 (W.D. Mo. Jan. 12, 2010). This is typically done after the close of discovery when I have more information and am able to make a factual determination as to whether the members of the conditionally certified class are similarly situated. See Davis, 408 F. Supp. 2d at 815. To be similarly situated, however, "class members need not be identically situated." Fast, 2007 WL 1796205, *4 (W.D. Mo. June 19, 2007).

Having reviewed plaintiffs' motion in light of the relevant standards, I find that they have cleared the relatively low hurdle of demonstrating that conditional certification of the collective action is appropriate. Plaintiffs have come forward with substantial allegations that they and the other members of the proposed collective action were victims of a single decision, policy or plan to deprive them of compensation, namely, that they were required to perform some work, including donning and doffing clothing and equipment and relieving co-workers, without getting paid for it. For purposes of this motion, Doe Run does not dispute that all workers at Doe Run's Herculaneum plant were subject to these mandatory procedures or that they were required to perform these activities off the clock

without pay.[3] Instead, defendants challenge the propriety of conditional certification by arguing that Doe Run and All Type are not joint employers and that some potential class members are subject to a mandatory arbitration provision. These arguments are insufficient to defeat conditional certification.

Under the FLSA, two or more employers may employ a person jointly, and each joint employer is individually responsible for complying with the FLSA with respect to the entire employment. 29 C.F.R. § 791.2(a). The Eighth Circuit has not established a test to determine whether an entity may be held to be a joint employer under the FLSA; however, several courts in this circuit have been guided by the following four factors: (1) the power to hire and fire employees: (2) supervision and control of employee work schedules or conditions of employment; (3) determination of the rate and method of payment; and (4) maintenance of employment records. Arnold v. DirecTV, Inc., 2012 WL 4480723, *4 (E.D. Mo. Sept. 28, 2012); Arnold v. DirecTV, Inc., 2011 WL 839636, at *6 (E.D. Mo. Mar. 7, 2011) (citing Schubert v. Bethesda Health Group, Inc., 319 F. Supp. 2d 963, 971 (E.D. Mo. 2004)). No one factor is dispositive; courts examine the "economic realities" of the working relationship rather than technical definitions relating to

---

[3] All Type argues that the affidavits establishing these allegations should be ignored on hearsay grounds. As discussed below, that argument is rejected.

employment. Arnold, 2012 WL 4480723 at *5 (citing Goldberg v. Whitaker House Coop., Inc., 366 U.S. 28, 33(1961)).

I find that plaintiffs have alleged sufficient facts to sustain their modest burden for conditional certification on this issue. Plaintiffs have alleged that Doe Run controls both scheduling and day-to-day management of all Herculaneum plant workers. Contract workers have alleged that they were subject to training, discipline, and even termination by Doe Run. Doe Run tested all workers for lead exposure and maintained the results of those tests. More importantly, all workers, whether contract or regular employees, were subject to the same donning and doffing procedures that are at issue in this case. When some contract employees requested compensation from All Type for these required off the clock duties, they were told by All Type that they would not be paid because Doe Run did not pay its employees for these activities. Although defendants challenge the basis for these assertions, threshold employment questions do not keep the Court from conditionally certifying the collective action. See Arnold, 2012 WL 4480723, at *5; Nobles v. State Farm Mut. Auto. Ins. Co., 2011 WL 3794021, *11-12 (W.D. Mo. Aug. 25, 2011) ("Although courts have later decertified actions because of employment relationship questions, this does not alter the present burden at the conditional certification stage considered here."). Moreover, the Court can

consider plaintiffs' provided affidavits in support of conditional certification even if, as defendants argue, some of the statements in the affidavits would not be admissible at trial. See In re Zurn Pex Plumbing Prods. Liab. Litig., 644 F.3d 604, 613 (8th Cir. 2011) ("Because a decision to certify a class is far from a conclusive judgment on the merits of the case, it is of necessity not accompanied by the traditional rules and procedure applicable to civil trials.") (internal quotation marks and citation omitted); Lindsay v. Wells Fargo Advisors, LLC, 2013 WL 943736, *5-*6 (E.D. Mo. Mar. 11, 2013) (applying In re Zurn to conditional certification). Additionally, "[e]mployees can testify to the working practices of others that they observe." Davenport, 2012 WL 3563974, at *1. Defendants' arguments regarding the joint employer issue are inappropriate at this stage of the proceedings and can be raised at the second, or decertification, stage. Arnold, 2012 WL 4480723, at *5.

The same is true of Doe Run's argument that conditional certification should be denied because some potential class members may be required to arbitrate their FLSA claims. Other courts have held that "'the existence of arbitration agreements is irrelevant to class certification, because it raises a merits-based determination.'" Hernandez v. Immortal Rise, Inc., 2012 WL 4369746, *5 (E.D.N.Y. Sept. 24, 2012) (quoting D'Antuono v. C & G of Groton, Inc., 2011

WL 5878045, *2 (D. Conn. Nov. 23, 2011)). In Davis v. NovaStar Mortg., Inc., 408 F. Supp. 2d 811, 818 (W.D. Mo. 2005), the district court rejected defendant's argument that conditional certification should be denied because some potential class members had signed arbitration agreements. Instead, the court granted conditional certification despite the arbitration issues and indicated that, once the identity of the class members had been determined, it would consider whether to compel arbitration of certain claims at that time. Id. (adopting the approach set out in Villatoro v. Kim Son Restaurant, L.P., 286 F. Supp. 2d 807, 808 (S.D. Tex. 2003)). I agree with the Davis court's handling of this issue and adopt the same approach here. If Doe Run chooses to move to compel arbitration of certain claims once the potential class members have been determined, I will consider whether the claims are arbitrable at that time.[4] I will not, however, deny conditional certification on this basis.

Doe Run's argument that notice to potential class members is unnecessary because plaintiffs' counsel have "already notified" class members about the lawsuit is simply a rehashing of those arguments already rejected in my March 24,

---

[4] In fact, the parties have already adopted just such an approach in this case and there is no indication that it will not continue to work once notice has been sent out. As always, I encourage the parties to work cooperatively as much as possible and not file lengthy motions or needless oppositions when a simple consent motion to compel arbitration would suffice.

2014, Memorandum and Order denying defendant's motion to disqualify. I find no basis to deny plaintiffs' request for notification of this FLSA collective action based on the prior actions of plaintiffs' counsel, and I do not find the reasoning of the unpublished decision in Dell'Orfano v. IKON Office Solutions, Inc., Civil Action No. 5:05-cv-245 (M.D. Ga. Aug. 18, 2006),[5] persuasive or applicable here. Finally, I reject All Type's argument that conditional certification should be denied because plaintiffs allegedly have not "substantiated" their belief that additional potential class members will choose to opt in if the class is conditionally certified. An alleged lack of interest in a collective action by potential class members is not an appropriate factor to consider when deciding whether to conditionally certify a collective action. See Ondes v. Monsanto Co., 2011 WL 6152858, *5 (Dec. 12, 2011).

For purposes of this motion, defendants' arguments do not preclude conditional certification of a collective action. After discovery is complete and the matter is fully briefed, I may decertify the collective action if defendants show that it is appropriate then. But I cannot deny conditional certification of the proposed collective action based on the arguments raised by defendants.

---

[5]Doe Run attached this case as Exhibit 2 in support of their opposition to conditional certification.

As plaintiff has pled a willful violation, a three-year certification period is appropriate. See Simmons v. Enterprise Holdings, Inc., 2011 WL 855669, *4 (E.D. Mo. Mar. 9, 2011) (three-year certification period); Beasely v. GC Services LP, 270 F.R.D. 442, 445 (E.D. Mo. 2010) (same). I find the dates used in the proposed class definition are appropriate as the Court believes the limitation period should be tolled for a brief period upon the filing of the motion for conditional certification to permit the Court to rule on this issue. I agree with Doe Run that plaintiffs are not entitled to the social security numbers and phone numbers of potential class members at this time. Rather, defendants shall simply provide plaintiffs with the names, last known addresses, and dates of employment for all potential class members. If, however, notices sent by mail are returned and additional information is required to notify potential class members, then I expect counsel to meet and confer in good faith about this issue and attempt to resolve it in a manner designed to safeguard the privacy of potential class members and without further Court involvement. I also agree with defendants that the Notice must be revised to specifically indicate that it applies only to workers at the Herculaneum facility and that the Notice and class definitions should be specific as to the types of pre- and post-shift activities included within the class definition

instead of using "etc."[6] I also do not believe it is necessary or appropriate to list the names of the individuals who have already filed consents to join. I agree with plaintiffs that a ninety-day consent to join period is appropriate. Most of defendants' remaining objections to the proposed form of Notice are meritless and will be overruled if the parties insist on fighting about these issues, so with these guidelines in mind, I expect the parties to meet and confer in good faith to agree upon a proposed form of notice, to be filed for the Court's consideration within 20 days of the date of this Order. I also expect plaintiffs to file revised class and/or subclass definitions in accordance with this Memorandum and Order within 10 days of the date of this Order. Absent further Order from the Court, these revised class and/or subclass definitions will be used by the parties in preparing their proposed form of Notice for the Court's consideration and in providing the information to plaintiffs' counsel about the potential class members as set out below.

Finally, I have not yet held a Rule 16 scheduling conference in this case. Given the current procedural posture, however, I believe that an early referral to mediation, likely after the notice period expires, may be appropriate and in the best

---

[6]I do not find the use of "etc." in the class definition or proposed Notice fatal to conditional certification as plaintiffs' complaint and brief are specific as to the types of activities included and this wording issue can be easily corrected by plaintiffs' counsel.

interests of all parties. Therefore, I would like the parties to consult about the propriety of early mediation and file a joint memorandum setting out their respective positions on this issue. If the parties agree to mediation, they should also provide proposed dates for referral to and completion of mediation, along with an indication of whether a stay or a scheduling conference may be required.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs' motion for order conditionally certifying collective action [#46] is granted to the following extent: plaintiffs shall provide revised class and subclass definitions in accordance with this Memorandum and Order within 10 days of the date of this Order.

**IT IS FURTHER ORDERED** that defendants shall provide plaintiff's attorneys with the names, employment dates, and last known addresses of all potential class members within 15 days of the date of this Order.

**IT IS FURTHER ORDERED** that the parties shall file a joint proposed form of notice for the Court's consideration, consistent with this Order, within 20 days of the date of this Order. If the parties cannot agree on a joint proposed form of notice after good faith efforts, then the parties shall file their own proposed forms of notice, each with a brief memorandum setting out the areas of disagreement and support for their position, for the Court's consideration.

**IT IS FURTHER ORDERED** that defendant Doe Run's motions to compel arbitration [#49, #50] are granted as follows: plaintiff Beth Ann Sappington is ordered to arbitrate her claims as set out in her separation agreement, and the claims of plaintiff Beth Ann Sappington against defendant Doe Run are stayed pending completion of arbitration. Plaintiff Herb J. Schnell, III is ordered to arbitrate his claims as set out in his separation agreement, and the claims of plaintiff Herb J. Schnell against defendant Doe Run are stayed pending completion of arbitration.

**IT IS FURTHER ORDERED** that the parties shall file a joint memorandum regarding mediation as set out above within 20 days of the date of this Order.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 21st day of July, 2014.